UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONALD MAYS, ) | CASE NO. 5:11CV433 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE GEORGE J. |
| ) | LIMBERT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | MEMORANDUM OPINION AND |
| SOCIAL SECURITY, ) | ORDER |
| ) | |
| Defendant. ) | |

Donald Mays ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice:

**I. PROCEDURAL AND FACTUAL HISTORY**

On July 13, 2007[1], Plaintiff filed an application for DIB and SSI, alleging disability beginning August 18, 2002. ECF Dkt. #13 at 151-153.[2] Plaintiff's date last insured was December 31, 2007. *Id.* at 71. The SSA denied Plaintiff's applications initially, ECF Dkt. #11-4 at 111-112, and on reconsideration. *Id.* at 113-114.

On April 10, 2008, Plaintiff filed a request for an administrative hearing. *Id.* at 138-139. On April 15, 2010, an ALJ conducted an administrative hearing where Plaintiff was represented by

---

[1]Plaintiff's application for SSI is not included in the record. However, a prior application for DIB, which was filed on January 13, 2003, is included in the record. ECF Dkt. #13 at 148-150.

[2]Page numbers refer to "Page ID" numbers in the electronic filing system.

counsel. *Id.* at 87-110. At the hearing, the ALJ heard testimony from Plaintiff and Barbara E. Burk, a vocational expert ("VE"). *Id*. On May 6, 2010, the ALJ issued a Decision ("Decision") denying benefits. *Id.* at 71-85. Plaintiff filed a request for review, *Id.* at 67, which the Appeals Council denied. *Id*. at 64-66.

On March 1, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 19, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #17. On October 3, 2011, Defendant filed a brief on the merits. ECF Dkt. #19. No reply brief was filed.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from affective disorder and degenerative disc disease, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #13 at 73. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 74. The ALJ ultimately determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. 404.1567(c) and 416.967(c), with the following restrictions: Plaintiff is able to lift and carry up to fifty pounds occasionally twenty-five pounds frequently; He can sit, stand, or walk for a total six hours in an eight hour day, however, he is able to stand or walk for only ninety minutes at one time, and then requires the ability to sit for five minutes; Plaintiff is able to occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds; Plaintiff can frequently balance, stoop, kneel, crouch or crawl; He must avoid extreme cold temperatures as well as hazards and heights; Plaintiff is able to perform simple routine tasks that do not involve high production quotas or piecework; Plaintiff is limited to superficial interaction with coworkers and supervisors, and is precluded from interaction with the public; Plaintiff must avoid work involving arbitration, confrontation or negotiation; and Plaintiff is unable to perform tasks involving written instructions. *Id.* at 75-76. The VE testified that Plaintiff could perform the occupations of commercial cleaner, day laborer, and landscape laborer. *Id.* at 80. Based upon Plaintiff's RFC, his age, education, and work experience, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long

as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

Plaintiff asserts two arguments in this appeal. With respect to his mental impairments, Plaintiff contends that the ALJ should have evaluated his I.Q. deficits under Listing 12.05C. With respect to his physical impairments, Plaintiff contends that the ALJ's RFC is not supported by substantial evidence, due to the ALJ's failure to recognize Plaintiff's need of a cane for ambulation and the ALJ's failure to resolve conflicts between the opinions of two consulting physicians.

At the hearing, Plaintiff testified that he completed the seventh grade. ECF Dkt. #13 at 90. He goes to bed late at night, and, because of pain in his legs and headaches, he can only sleep a few hours. *Id.* at 91, 96. He suffers from throbbing pain in his thighs, calves, and feet. *Id.* at 100. He also suffers from headaches that make him photosensitive, which are brought on when he lays down at night and when he sits for too long. *Id.* at 97. Plaintiff's girlfriend cooks his meals and he sometimes needs assistance using the bathroom. *Id.* at 91. He summarized his daily activities as follows: watching television, playing with his children, and trying to help around the house. *Id.* at 92. At the hearing, Plaintiff used a cane for ambulation, but he testified that it was not prescribed by a doctor. *Id.* at 93. He takes Vicodin and Flexiril for pain. *Id.* at 93-94.

He was "pretty sure" that he takes Cymbalta to treat depression. *Id.* at 94. He sees a psychiatrist three times a month. *Id.* Although Plaintiff conceded that he was cited for driving while intoxicated in 2002, he testified that he had not consumed alcohol since Thanksgiving. *Id.* at 93. Plaintiff further testified that the psychiatrist helps him "somewhat," but that sometimes the psychiatrist tells him things that he does not understand. *Id.* at 95. He is easily irritated with people because he thinks "they're really wanting to get [him]." *Id.* at 100. Plaintiff struck his supervisor at "Compco" because the supervisor was "writing bad things about him." *Id.* at 98. Plaintiff

-4-

testified that he has difficulty understanding "real big words." *Id.* at 99. The VE described Plaintiff's past work as follows: Product assembler, which is customarily performed at a medium level but Plaintiff performed it at a heavy level, marginally semi-skilled with an SVP of three, he was recently at the seventh to eighth grade GED level, and a fourth to sixth grade math GED level; in 1995; and Assembler, medium unskilled with an SVP of two. *Id.* at 101-102.

Plaintiff first argues that the ALJ erred by failing to find that his impairment meets or equals Listing 12.05C, the listing for mental retardation. A claimant has the burden of demonstrating that his impairment meets or equals a listed impairment. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). The diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 reads: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates onset of impairment before age 22."

A claimant can demonstrate that he is disabled by presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). In other words, to demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations. Beyond these three factors, a claimant also must satisfy "any one of the four sets of criteria" in Listing § 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); see also *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001) ("[A] claimant will meet the listing for mental retardation only if the [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria[.]") (second alteration in original) (internal quotations marks omitted).

The four sets of criteria in Listing 12.05 provide:

(A) Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

(B) A valid verbal, performance, or full scale IQ of 59 or less; or

(C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

> (D) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in at least two of the following:
>
>> (1) Marked restriction of activities of daily living; or
>>
>> (2) Marked difficulties in maintaining social functioning;
>>
>> (3) Marked difficulties in maintaining concentration, persistence, or pace; or
>>
>> (4) Repeated episodes of decomposition, each of extended duration.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C).

Plaintiff contends that the ALJ should have assessed his limited intellectual abilities at step three and that, because his school records were not made a part of the record, this matter should be remanded in order that his school records may be obtained. The ALJ's only reference to Plaintiff's I.Q. score was at page fifteen of the Decision, where he observed:

> During the examination, [Donald Delgi, M.A., a psychologist] administered cognitive abilities tests to [Plaintiff], which yielded a full scale IQ score of 61, which is within the range of mild mental retardation (Ex 14F:3). Dr. Degli noted, however, that [Plaintiff's] overall adult functioning is clearly above that level. Dr. Delgi reported that at several points he questioned [Plaintiff's] efforts as he had seemed lackluster and exhibited a pack of interest and perhaps fatigue after a lengthy assessment. (Ex 14F:3). Dr. Delgi also reported that some of the poor scoring could have been the result of [Plaintiff's] general intellectual deficiency since he had dropped out of school before finishing the 8th grade.

ECF Dkt. #13 at 78.

Plaintiff relies, instead, on the conclusions of Mitchell Wax, Ph.D., who conducted a psychological examination at the request of the Bureau of Disability Determination on April 16, 2003. Plaintiff's reliance on Dr. Wax's opinion is misplaced, however, since Dr. Wax's opinion was consistent with the opinion of Dr. Delgi. A Wechsler Adult Intelligence test resulted in a verbal IQ of 63, performance IQ of 63 and a full scale IQ of 60. *Id.* at 269. However, Dr. Wax opined that this test was invalid noting that the Plaintiff was disinterested in testing, was slow, gave up quickly, seemed mentally confused, often needed questions repeated, and was covertly angry, bitter and sarcastic. *Id.* As a consequence, Dr. Wax provided no diagnosis with respect to Axis II. *Id.* at 271. Dr. Wax did note that the Plaintiff stated that he was in special education classes while he was in school, and school records should be obtained. *Id.* at 269. The Wechsler Memory Scale resulted in

a memory quotient of 73 which suggested a significant problem with memory and the Wide Range Achievement Test revealed word recognition at a 3.6 grade level and a sight vocabulary at the third grade level. *Id.*

Based upon the record, there was insufficient evidence to conclude that Plaintiff's I.Q. score met the requirements of the listing. Neither of the examiners concluded that the I.Q. scores were an accurate reflection of Plaintiff's intellectual ability. In fact, both examiners concluded that Plaintiff functioned at a higher level than the test results established. Plaintiff's sixteen-year work history is further evidence that Plaintiff's I.Q. is not accurately reflected by the tests. At one point in his job history, Plaintiff maintained a marginally semi-skilled job. Furthermore, Plaintiff did not provide any testimony to support the conclusion that he left school due to any difficulty with his classes.

Admittedly, both examiners concluded that Plaintiff has difficulty understanding and communicating. For instance, Dr. Waxman concluded that Plaintiff's ability to relate with others is significantly impaired; despite invalid IQ scores, his thought disorder has affected his cognitive abilities and he is not mentally capable of understanding, remembering and following instructions; and his ability to maintain, attention, concentration and persistence is significantly impaired. *Id.* at 270-271. However, neither examiner concluded that his I.Q. score falls within the 60 to 70 range. The state agency reviewing physicians reached the same conclusion, that is, that Plaintiff suffers from borderline intellectual functioning, as opposed to mental retardation. *Id.* at 287, 362. Accordingly, the ALJ was under no obligation to acquire Plaintiff's school records, in lieu of substantial evidence in the record that Plaintiff did not meet the I.Q. requirement in 12.05.

Next, Plaintiff argues that there is not substantial evidence supporting his RFC because the ALJ's failure to recognize Plaintiff's need of a cane and the ALJ's failure to address the competing opinions of two physicians. Plaintiff asserts that the ALJ's observation that Cyril E. Marshall, M.D., an orthopaedic physician, did not prescribe a cane for Plaintiff is somehow a violation of the treating physician's rule. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating

physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the

-8-

Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

Here, the ALJ merely observed that, although Dr. Marshall's notes indicate that Plaintiff began using a cane for ambulation in 2008, the notes do not reflect that Dr. Marshall prescribed the cane. The ALJ's statement is consistent with Plaintiff's testimony at the hearing, where he stated that the cane was not prescribed by a physician, but that he had been using it for approximately three years to take pressure off of his legs, mainly his right leg, when walking and standing. *Id.* at 96. However, Plaintiff writes, "[t]he ALJ ignores the fact that Dr. Marshall also reported in 2009 that [Plaintiff] has to ambulate with a cane and walks with a marked limp." *Id.* at 502.

POMS DI 25020.005B.6, captioned "Medically-Necessary Hand-Held Assistive Device" directs the reader's attention to POMS DI 25015.020B.6, which reads, in pertinent part, "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Here, although Dr. Marshall acknowledges Plaintiff's use of a cane, his medical notes reveal that he did not prescribe the cane, nor did he recommend the cane for ambulation. Moreover, Dr. Marshall's notes do not support the conclusion that the cane is medically necessary. Accordingly, the ALJ did not err in refusing to consider Plaintiff's use of a cane for ambulation in formulating his RFC.

Plaintiff also argues that the RFC in this case is not supported by substantial evidence because the ALJ erred when he failed to resolve a conflict between the opinion of two consulting

-9-

examiners, Mary Helene Massullo, M.D. and Michael R. Magoline, M.D.  Dr. Massullo examined Plaintiff on April 1, 2003.  *Id.* at 250-254.  Dr. Massullo wrote, "The patient claims he has chronic low back pain with occasional loss of control of his bilateral lower extremities causing him to fall once a week since 1988.  For this reason, any prolonged standing, walking, lifting, carrying involving his lower back, traveling involving the use of his lower extremities may be impaired." *Id.* at 254. Dr. Magoline examined Plaintiff on October 19, 2007.  *Id.* at 321-326.  Dr. Magoline diagnosed mild paraspinal muscle spasm in the lower lumbar region, and noted "minimal findings on physical exam" despite Plaintiff's ongoing complaints about low back pain.  *Id.* at 322.  He further opined that Plaintiff's ability to work was limited "based on psychological and psychiatric issues more so then from orthopaedic limitations ."  *Id.*   Dr. Magoline recommended magnetic resonance imaging ("MRI").  *Id.*  On March 3, 2010, Plaintiff underwent an MRI scan of the lumbar spine, which revealed minimal multilevel degenerative disc disease, with moderate to severe bilateral hypertrophy at L4-L5, but an otherwise negative examination. *Id.* at 491.

Plaintiff contends that the ALJ failed to recognize the conflict between the opinions of Dr. Massullo and Dr. Magoline.  In fact, it appears that the ALJ gave greater weight to the opinion of Dr. Magoline, due to a lack of evidence in the record supporting Dr. Massullo's conclusions.  With respect to the medical records, the ALJ writes, "Dr. Massullo noted reduced range of motion with flexion but not extension or lateral flexion.  There was a nuclear medicine report from the same day indicating a narrowing of disc space at multiple thoracic and lumbar levels, however, no other findings were made."  *Id.* at 77.  Accordingly, the ALJ did not err in giving less weight to Dr. Massullo's opinion where her medical notes do not support her conclusions regarding Plaintiff's physical impairments.

The ALJ predicated the physical portion of the RFC on the paucity of evidence supporting Plaintiff's claims of debilitating pain.  The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 416.929.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can

-10-

reasonably be expected to produce such disabling pain.  *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

In this case, the objective medical evidence reveals only mild to moderate degeneration of the spine.  When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination.  *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged.  It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of his symptoms were not substantiated by the objective medical findings or other evidence in the record.  An ALJ is not required to accept a plaintiff's own

-11-

testimony regarding his pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). The ALJ recognized that, despite Dr. Marshall's conclusion that Plaintiff was disabled, Dr. Marshall did not recommend physical therapy, pain management, or surgical intervention, or any other conservative treatment. *Id.* at 77. He further acknowledged that Dr. Marshall's course of treatment was inconsistent with "what one would expect if [Plaintiff] were as limited as he has alleged." *Id.* As a consequence, the ALJ relied upon the lion's share of the medical evidence in the record, which indicated only mild to moderate degeneration of the spine, to conclude that Plaintiff could perform medium work with the limitations provided in the RFC.

For the foregoing reasons, the undersigned AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice.

DATE: May 22, 2012

                                          */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE